Russell Firebaugh, Appellant, v. Ellen Seegren et al., Appellees.

Gen. No. 36,472.

48

M̲ATCHETT, J., dissenting.

Opin-
ion filed January 6, 1933.  Rehearing denied January 16, 1933.

ARTHUR ABRAHAM, for appellant.

ERNEST A. EKLUND and FREDERICK J. BERTRAM, for
appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the
court.

By this appeal Russell Firebaugh, trustee, seeks to
reverse an order entered by the superior court of
Cook county on October 11, 1932, appointing a receiver
in a foreclosure suit.

The record discloses that March 1, 1929, the defend-
ants, Mr. and Mrs. Seegren and others, owned real
estate in Chicago and on that date executed their
bonds in the sum of $67,500 and to secure the payment
of the bonds gave a trust deed on the property to
Russell Firebaugh, trustee.  On or about September 2,
1930, Russell Firebaugh, as trustee, took possession
of the premises—a 16-apartment building—covered

by the trust deed and proceeded to manage the property and collect the rents in accordance with the provisions of the trust deed. A few days afterward Firebaugh filed his bill to foreclose the trust deed, and after a hearing a decree was entered and the Seegrens and others prosecuted an appeal to this court, where the decree was affirmed, 265 Ill. App. 381; certiorari was denied by the Supreme Court, 265 Ill. App. XIII.

In the bill of foreclosure the trustee prayed for the appointment of a receiver. The decree authorized the trustee to continue in possession of the premises, collect the rents and manage the property as he saw fit, subject to the order and approval of the court, until the period of redemption expired.

October 10, 1932, Mr. and Mrs. Seegren, part owners of the equity of redemption, filed their verified petition in the proceeding, by which they sought to have a receiver of the property appointed in lieu of Firebaugh. The substance of the allegations of the petition was that September 2, 1930, Firebaugh took possession of the premises under the trust deed and proceeded to take charge of the building and collect the rents; that in addition to the rentals he had received large sums of money from the owners of the equity of redemption in excess of $15,000 to apply on account of the indebtedness secured by the trust deed; and charging, upon information and belief, that Firebaugh had failed to account for the rents; that he was insolvent and had not efficiently managed the building, and that it was for the best interests of all parties that the property be taken from Firebaugh and placed in the hands of a receiver under the direction of the court.

On the same day Firebaugh filed his verified answer, in which he admitted that he had collected certain sums of money from the owners of the equity; alleged that on July 18, 1931, the date on which the foreclosure

decree was entered, he had accounted for all moneys received by him up to that date; denied he had converted any rents or other moneys to his use, and offered at any time, under the direction of the court, to make a full and complete accounting; denied that he was insolvent and had not efficiently managed the property.

It was also contended that Firebaugh had not advertised the property for sale as the decree provided, which he admitted had not been done because of his inability to secure sufficient bondholders to deposit their bonds with him so that he could bid in the property.

The matter came on for hearing before the chancellor rather informally and there was discussion between court and counsel. Statements were made by counsel, and from the hearing it appears that a solicitor for the owners of about 10 per cent of the bonds joined orally in the motion of the petitioners for the appointment of a receiver. It was denied that Firebaugh was insolvent. There was also discussion concerning a suit filed in the federal court involving the company that apparently purchased the bond issue involved in the foreclosure suit. It further appeared that no part of the taxes on the property for the years 1928, 1929, and 1930, had been paid, but that objections had been filed in the county court to these taxes. Firebaugh's itemized statement, which was said by his counsel to show all the receipts and disbursements in connection with the operation of the apartment building, was exhibited to the court and appears in the certificate of evidence. It was admitted that Firebaugh had in his possession $3,031.49 of the proceeds received by him from the operation of the building.

The court said that since the trustee was not under bond, and since a charge as to Firebaugh's insolvency had been made, and since there was some question

raised in the case in the federal court which might involve the property under foreclosure, and since no part of the taxes had been paid, he was of the opinion it would be for the best interest of the bondholders and the owners of the equity that a receiver be appointed, over which the court would have direct control, and the order was accordingly entered. An order was also entered directing Firebaugh, as trustee, to turn over the money in his hands to the receiver. The receiver's bond in the sum of $10,000 was filed and approved and the trustee prosecutes this interlocutory appeal.

A number of legal propositions are advanced by the trustee as to why the order appointing the receiver is wrong and should be reversed, and among the cases cited in support of the contentions are *Altschuler v. Sandelman,* 264 Ill. App. 106; *Consumers Bond & Mortgage Co. v. Sadin,* 266 Ill. App. 141, and other cases. The holding in each of these cases is that where a receiver is appointed in a suit brought to foreclose a junior mortgage, the trustee of the prior mortgage, which is a first lien on the property, may intervene in the foreclosure suit and have the property turned over to him. But we think that question is not important here because we are of the opinion that under the pleadings and the facts shown on the hearing, the court had the right to appoint a receiver of the property. The bill prayed for the appointment of a receiver and the decree authorized the trustee to stay in possession of the premises subject to the further order of the court until the period of the equity of redemption expired.

Under the facts as we have above discussed them, which appeared on the hearing of the motion for the appointment of the receiver, we are unable to say that the action of the chancellor in appointing the receiver was unwarranted. As a general proposition, a re-

ceiver will be appointed by the court where it is for the best interest of all parties, even when contrary to the provision of the contract. *Frank v. Siegel,* 263 Ill. App. 316.

A further complaint is made that the order entered was erroneous because there was no hearing, no witnesses sworn, and the trustee had by his verified answer denied the allegations of the petition. There might be some merit in this point if it had been urged on the hearing, but a reading of the entire proceeding before the chancellor discloses the fact that no objection was made that witnesses were not sworn and heard, or that the hearing was conducted informally. Matters of this kind, we know, are often brought up as motions of course. The trustee, not having made any objection to the manner in which the motion was heard, cannot urge such contention for the first time in a court of review.

A further point is made that the order appointing the receiver is fatally defective in that it does not affirmatively show that the court was of the opinion that the receiver should be appointed without requiring bond by the owners of the equity of redemption who made the motion. We think this contention is untenable. All of the facts are in the record and it is therefore not necessary that the specific finding appear in the order. *Central Trust Co. of Illinois v. McGurn,* 257 Ill. App. 45.

The order of the superior court appealed from is affirmed.

*Order affirmed.*

McSurely, P. J., concurs.
Matchett, J., dissents.